[Civ. No. 21067. First Dist., Div. Two. Dec. 11, 1963.]

T. G. THOMPSON, Plaintiff and Appellant, v. RICHARD MATTUCCI et al., Defendants and Respondents.

Morgan & Moscone and George R. Moscone for Plaintiff and Appellant.

Mullally & McCorkindale and John McCorkindale for Defendants and Respondents.

AGEE, J.—Plaintiff appeals from a judgment of $1,000 entered upon a jury verdict in his favor in a personal injury action. The sole issue is whether the award is inadequate as a matter of law.

On February 12, 1960, plaintiff was a passenger in an automobile which was stopped in a line of traffic waiting for a change in the signal light at the intersection ahead. Defendants' automobile ran into the rear of this automobile and knocked it into the rear of the automobile ahead. De-

fendant driver testified that his speed upon impact was 23 miles per hour. The force of the impact threw plaintiff violently forward and dazed him for a few minutes.

Plaintiff was taken to the office of Dr. Deissler, an internist who had been treating him for hypertension and a heart condition. Dr. Deissler ordered X-rays of the neck area and then referred the case to an orthopedic surgeon, Dr. Lewis, who diagnosed the injury as a sprain of the cervical spine.

Plaintiff was hospitalized on February 15, 1960. His neck was placed in traction and he was given medication and hot compresses to relieve the pain. He was released from the hospital on March 1, 1960, at which time the muscle spasms were less acute. He was fitted with a neck collar, which he wore until April 7, 1960.

Physical therapy treatments were continued at the hospital on an outpatient basis until April 18, 1960, at which time the muscle spasm was gone but there was still some limitation of motion in the neck. There were 19 of these treatments given in all.

Dr. Lewis saw plaintiff almost every day during his hospitalization and continued to see him at his office thereafter. On December 5, 1960, and December 12, 1960, he injected Novocain and hydrocortisone solution into the left side of plaintiff's neck, which was the focus of the pain. He last saw plaintiff for treatment on December 19, 1960.

On January 8, 1962, Dr. Lewis saw plaintiff at the request of plaintiff's attorney. He testified at the trial on the following day that plaintiff still had pain in his neck and that he was "going to have to learn to live with it—with the way his neck is."

Plaintiff incurred the following hospital and medical expenses: hospital, $642.16; Dr. Lewis, $282; X-rays, 25; and post-hospital physical therapy, $114. These items total $1,063.16.

Defendants argue that such total should be reduced to $833.65. We do not agree. While the evidence must be viewed in the light most favorable to defendants, we do not believe that this requires us to accept the reductions suggested by defendants when in our opinion there is no reasonable basis for so doing.

Defendants call attention to plaintiff's testimony that he personally paid $171.08 on account of the hospital bill. The record shows that plaintiff was covered by "Blue Cross." Apparently the balance was paid under this plan. Defend-

ants do not contend that such coverage reduced the amount of their liability for the hospital bill. (*Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347, 349 [170 P.2d 448, 166 A.L.R. 198].) However, they suggest that plaintiff's personal payment of $171.08 "could have been for special services paid for by himself and not connected with the injury." This conjecture is clearly and directly refuted by the itemized hospital bill, which was admitted in evidence without objection, as well as by plaintiff's own testimony.

The bill of Dr. Lewis for $282 includes some injections of vitamin B 12 for which no separate charge is made. However, he testified that this was part of his treatment of plaintiff's neck injury and that this vitamin had a healing effect upon nerves.

The post-hospital physical therapy item of $114 is made up of two bills of $78 and $36, respectively. The first bill was introduced as a separate exhibit and, when the second bill was offered thereafter, defendants' counsel himself suggested that "these [bills] go together." The court agreed. Defendants' contention that there is only one bill of $78 for physical therapy is apparently an oversight.

As to the special damages claimed by plaintiff for loss of earnings from his existing used car business and anticipated profits from a proposed expansion of this business at a second location, the jury could reasonably have concluded that plaintiff had failed to sustain the necessary burden of proof. Under the state of the evidence, this was an issue solely within its province.

Defendants chose not to call a single medical witness. They contented themselves with arguments about plaintiff's general condition of health and a prior accident in which he had injured his right wrist and some ribs.

Plaintiff's only claim of physical injury was a sprain of the cervical spine and the award of $1,000 necessarily carries with it a finding by the jury that plaintiff did sustain such an injury to his neck in the accident involved herein. We realize that the severity and duration of this type of injury varies with each individual case.

However, in our opinion, the record in the instant action establishes that the award herein, which does not even cover the amount of the hospital and medical expenses necessarily incurred or allow anything for the pain and suffering which inevitably accompany this type of injury, is inade-

quate as a matter of law. (*Clifford* v. *Ruocco*, 39 Cal.2d 327, 329 [246 P.2d 651].)

Defendants' liability for the happening of the accident is so clearly established that there is no good reason to retry this issue. (*Pretzer* v. *California Transit Co.*, 211 Cal. 202, 209 [294 P. 382].)

The judgment is reversed and the cause remanded for a new trial solely upon the issue of the amount of damages, and the trial court is directed to render judgment in favor of plaintiff for the amount of damages so found upon a determination of that issue.

Shoemaker, P. J., and Taylor, J., concurred.